**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| CONNIE L. PHILLIPS, : | Case No. 3:19-cv-318 |
| Plaintiff, : | |
| vs. : | Magistrate Judge Sharon L. Ovington |
| : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL : | |
| SECURITY ADMINISTRATION, : | |
| Defendant. : | |

**DECISION AND ENTRY**

**I.      Introduction**

Plaintiff Connie L. Phillips filed an application for Disability Insurance Benefits and Supplemental Security Income in April 2009. Her claim was denied initially and upon reconsideration. She requested a hearing, and after that hearing, Administrative Law Judge (ALJ) Paul R. Armstrong issued a decision finding that Plaintiff was not under a "disability" as defined in the Social Security Act. The Appeals Council granted Plaintiff's request for review and remanded the case.

After a second hearing at Plaintiff's request, Administrative Law Judge Gregory G. Kenyon issued an unfavorable decision finding that Plaintiff was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. She subsequently filed an action before this Court. At the parties' request, this Court ordered that the matter be remanded to the Commissioner for further proceedings.

On remand, the case returned to ALJ Kenyon. Plaintiff requested a third hearing. After that hearing, ALJ Kenyon again concluded Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff then filed the present action before this Court, and now seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 12), Plaintiff's Reply (Doc. No. 13) and the administrative record (Doc. No. 8).

## II.     **Background**

Plaintiff asserts that she has been under a disability since July 10, 1993. On the alleged disability onset date, she was twenty-one years old. At that time, Plaintiff was considered a "younger individual" under Social Security Regulations and has remained a "younger individual" at all times relevant to this case. *See* § 404.1563(c); 20 C.F.R. § 416.963(c).[1] She has a limited education.

The evidence of the record is sufficiently summarized in the ALJ's decision (Doc. No. 8-10, Page ID 1091-1108), Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 12), and Plaintiff's Reply (Doc. No. 13). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

### III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks

omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the legal criteria—may result in reversal even when the record contains substantial evidence supporting the factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, the Administrative Law Judge was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the Administrative Law Judge considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since March 23, 2007.

Step 2: She has the severe impairments of degenerative disc disease of the lumbar spine, arthritis of the left knee, asthma, chronic obstructive pulmonary disease (COPD), bipolar disorder, depression, anxiety, post-traumatic stress disorder (PTSD), and a history of polysubstance abuse.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "medium work" subject to the

4

>
> following limitations: "(1) no climbing of ladders, ropes, or scaffolds; (2) no work around hazards such as unprotected heights; (3) no concentrated exposure to temperature extremes or respiratory irritants; (4) limited to performing unskilled, simple, repetitive tasks; (5) only occasional contact with co-workers and supervisors; (6) no public contact; (7) no teamwork or tandem tasks; (8) no close, over-the-shoulder supervision; (9) no jobs involving rapid production pace work or strict production quotas; and (10) limited to performing jobs that involve very little, if any, change in the job duties or the work routine from one day to the next."
>
> Step 4: Plaintiff is unable to perform any past relevant work.
>
> Step 5: Plaintiff could perform work that exists in significant numbers in the national economy.

(Doc. No. 8-10, PageID 1093-1108). Based on these findings, the Administrative Law Judge concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 1108.

## V. Discussion

Plaintiff asserts in her Statement of Errors that the ALJ reversibly erred in evaluating the treating source opinions and medical evidence. Three treating source opinions are at issue including those of (1) treating psychiatrist, Dr. Vinod Patwa, (2) treating psychiatrist, Dr. Susan Songer, and (3) treating physician, Dr. Cindy Smith. (Doc. No. 9, PageID 1579).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242. The rule is straightforward: "Treating source opinions must be given 'controlling' weight if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in

5

[the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723. If a treating source opinion is not found to be deserving of controlling weight, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

Additionally, "[s]eparate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reason' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. "The purpose of the good reasons rule is twofold: first, 'to let claimants understand the disposition of their cases'; and second, to 'ensure[] that the ALJ applies the treating physician rule and permit[] meaningful review of the ALJ's application of the rule.'" *Hargett*, 964 F.3d at 552 (citations omitted).

Dr. Patwa's opinion was afforded "little weight." (Doc. No. 8-10, PageID 1102). Plaintiff asserts the same error—that the ALJ failed to apply the required criteria—as to all of the treating source opinions at issue, including Dr. Patwa's opinion. (Doc. No. 9, PageID 1577). This argument is unpersuasive as to Dr. Patwa's opinion because the ALJ subjected Dr. Patwa's opinion to the controlling weight analysis. He specifically determined that Dr. Patwa's opinion was not entitled to controlling weight because it was "inconsistent with

6

substantial evidence of record." (Doc. No. 8-10, PageID 1103). Before arriving at this conclusion, the ALJ discussed specific inconsistencies.

For instance, Dr. Patwa articulated that Plaintiff had a marked limitation in her ability to interact with the general public and an extreme limitation in her ability to get along with coworkers or peers. (Doc. No. 8-7, PageID 724). However, as the ALJ explained, this level of limitation was inconsistent with the evidence in the record. (Doc. No. 8-10, PageID 1102). Indeed, Plaintiff had a conflict with her sister and had "some difficulty getting along with medical providers." *Id.* Yet, these issues did not appear to derive directly from her mental impairments. For example, the ALJ pointed out that Plaintiff's conflict with her sister was caused by Plaintiff's attempts to regain custody of her children, and he noted that Plaintiff's issues with medical providers arose when her medical providers refused to continue prescribing her Xanax. *Id.* Similarly, Dr. Patwa consistently observed that Plaintiff was cooperative. (Doc. No. 8-7, PageID 564, 565, 566, 567) (Doc. No. 8-9, PageID 1009, 1010, 1011, 1012, 1013, 1014, 1015, 1016).

Notably, despite specifically finding that Dr. Patwa's opinion as to Plaintiff's ability to get along with others was not justified, the ALJ nevertheless appears to have taken this opinion into account in formulating Plaintiff's residual functional capacity. Plaintiff's residual functional capacity specifically provides for the following limitations: only occasional contact with co-workers and supervisors, no public contact, no teamwork or tandem tasks, and no close, over-the-shoulder supervision. These limitations seem to accommodate some of Dr. Patwa's opinions. (Doc. No. 8-10, PageID 1097).

In accordance with the regulations, the ALJ also properly considered the regulatory factors after determining that Dr. Patwa's opinion was not entitled to controlling weight. In doing so, the ALJ considered the length of the treatment relationship.  He noted that Dr. Patwa saw Plaintiff ten times, starting in July 2008, before submitting his mental functional capacity report, and then three more times after issuing the report. (Doc. No. 8-10, PageID 1102).  He ultimately reasoned that Dr. Patwa's opinion could not be afforded more deference because, in part, "Dr. Patwa saw Plaintiff for a limited period of time compared to the overall longitudinal record." *Id.* at 1103.

Dr. Patwa's opinions were also not supported by, nor consistent with, Dr. Patwa's own treatment notes, which contributed to the ALJ's determination that Dr. Patwa's opinion was not entitled to greater deference.  Despite his opinions that Plaintiff had marked to extreme limitations in some areas, Dr. Patwa's treatment notes reflected that Plaintiff's mental health impairments seemed to be improving over time.  Looking to the record, Dr. Patwa consistently described Plaintiff's thoughts as goal directed and organized, and frequently as logical and coherent. (Doc. No. 8-7, PageID 564, 565, 566, 567) (Doc. No. 8-9, PageID 1009, 1010, 1011, 1012, 1013, 1014, 1015, 1016).  Plaintiff had poor concentration on two occasions, and fair concentration on the vast majority of occasions. *Id.*  In her most recent encounter with Dr. Patwa, Plaintiff's concentration had improved from "fair" to "good," which is acknowledged in the decision. *Id.* at 1102.

For the reasons set forth above, no error was committed as to Dr. Patwa's opinion and the weighing of Dr. Patwa's opinion is supported by substantial evidence.

Dr. Songer's opinion was also afforded "little weight." (Doc. No. 8-10, PageID 1103). Dr. Songer submitted a medical report. (Doc. No. 8-7, PageID 707). This report lacked specific opinions as to Plaintiff's functional limitations, and instead included a list of Plaintiff's mental health diagnoses and medications, her subjective reports, and a check box indicating Plaintiff was "unemployable." (Doc. No. 8-10, PageID 1103).

A treating source opinion "that a claimant is disabled is an issue 'reserved to the Commissioner' and not entitled to 'any special significance.'" *McGeorge v. Comm'r of Soc. Sec.*, 309 F.Supp. 3d 514, 519 (S.D. Ohio 2018) (Newman, M.J.) (citing 20 C.F.R. § 404.1527(d)(1)). Indeed, "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight[,]" although they must be considered. *Id.* (citing SSR 96-5p, 1996 SSR LEXIS 2, at *1 (1996)).

As reflected in the decision, Dr. Songer's opinion that Plaintiff was "unemployable" is a determination that is reserved to the Commissioner. *Id.* Such an opinion is not entitled to controlling weight. Despite the conclusory nature of her opinion, however, Dr. Songer's opinion was nevertheless still assessed for controlling weight.

As an additional reason for not affording Dr. Songer's opinion controlling weight, the ALJ explained that her opinion was inconsistent with substantial evidence of record. *Id.* at 1103. There are several reasons for this finding. As an example, Dr. Songer's objective treatment notes indicate that Plaintiff maintained normal thought processing. *Id.*

Additionally, the ALJ reasoned that Dr. Songer's own treatment notes from the date that she issued her "unemployable" opinion, were inconsistent with that very opinion. On that date, Plaintiff's thought processes were described as logical and linear. (Doc. No. 8-

9

8, PageID 799). Plaintiff's mood was "ok" or "stable," and she reported that she had "no hallucinations at all anymore." *Id.* While Plaintiff was "briefly tearful at one point," she was "capable of full range" of affect. *Id.* She also acknowledged to Dr. Songer that her medication was helping her get along with people in her household, and that she was "more tolerable." *Id.* Dr. Songer's notes indicate that she observed that Plaintiff's "moods [were] more stable, but still with some depression, less severe." *Id.* at 800. Similarly, Plaintiff did not appear to have any psychosis although she still had "some anxiety." *Id.*

Subsequent notes from South Community indicate that Plaintiff's thought process continued to be logical and linear, and that she did not report delusions. *Id.* at 868, 871. Her insight and judgment were fair to poor, but mood was "OK." *Id.* at 868. Plaintiff was reported as continuing to have "some depression and anxiety" that was aggravated by family problems, particularly her daughter, but that medication was reportedly helping. *Id.* at 872, 888. At another visit, Plaintiff reported "doing 'OK' overall." *Id.* at 878. At a later visit, Plaintiff was categorized as "overall stable on current meds" and that her medication was helping her manage depression, moods, and anxiety. *Id.* at 904. However, Plaintiff was reported as angry at later visits because Dr. Songer could no longer prescribe her Xanax. *Id.* at 908, 911. Plaintiff planned to find another doctor as a result. *Id.* at 911.

Declining to afford the opinion great deference, the ALJ further explained that Dr. Songer's opinion was "submitted early in her treatment," and that Dr. Songer never submitted an updated report. (Doc. No. 8-10, PageID 1103). The ALJ also indicated that Dr. Songer's notes reflected that Plaintiff had an "improvement in overall quality of life since [she] obtained custody of her children in April 2012." *Id.*

10

In sum, good reasons were provided for assigning Dr. Songer's opinion "little weight," and a reasonable basis existed for declining to afford Dr. Songer's opinion controlling weight as it was a "conclusory statement without accompanying and supporting functional limitations." *Id.* at 1103-04. Plaintiff's argument is without merit.

Dr. Smith's opinion was also afforded "little weight." (Doc. No. 8-10, PageID 1104). Dr. Smith completed a medical report that offered specific functional limitations related to Plaintiff's physical and mental impairments. In addition to these limitations, Dr. Smith opined that Plaintiff's post-traumatic stress disorder and anxiety could be triggered unpredictability making it difficult to work. (Doc. No. 8-9, PageID 1064).

Dr. Smith's opinion was properly assessed for controlling weight, and the weighing of the opinion is supported by substantial evidence. In finding that the opinion was not entitled to controlling weight, the ALJ found that Dr. Smith's opinion was inconsistent with the substantial evidence of record. (Doc. No. 8-10, PageID 1105).

Prior to completing the medical report, Plaintiff had only complained to Dr. Smith about issues related to her COPD, and up until that point, her physical examinations had been mostly normal. *Id.* at 1104. On one occasion, Plaintiff was observed as having rhonchi and wheezing, but other exams reflected normal auscultation and effort. (Doc. No. 8-9, PageID 1024) (Doc. No. 8-10, PageID 1104). Despite these mostly normal findings, Dr. Smith opined that Plaintiff "could only stand for up to four hours at a time and could lift 50 pounds." (Doc. No. 8-10, PageID 1105). As the ALJ reasonably explains, the objective medical evidence available to Dr. Smith at the time her report was rendered does not support her opined limitations, nor does the later medical evidence. *Id.* Plaintiff later

11

reported knee and leg pain on a few occasions. However, she indicated that medication would relieve the pain. *Id.* And, despite this pain, treatment notes indicate that Dr. Smith's findings on physical exam were mostly normal. Dr. Smith's findings were also not supported by objective medical evidence, and the ALJ explained that Plaintiff usually had normal strength and gait, and consistently normal cardiopulmonary examinations. *Id.*

In reference to Plaintiff's mental impairments, the ALJ recognizes that Dr. Smith observed Plaintiff "rocking back and forth" on one occasion and Plaintiff's reports of hearing voices at times. *Id.* at 1104. Yet he accurately portrays Dr. Smith's observations that Plaintiff usually presented with appropriate mood and affect, but sometimes poor insight and judgment. (Doc. No. 8-9, PageID 1017, 1023, 1028, 1032, 1071, 1075). Several days after Dr. Smith completed her medical report, Plaintiff was observed with normal appearance, normal memory, appropriate mood and affect, and she was oriented to time, place, person, and situation. *Id.* at 1017.

After reasoning that Dr. Smith's opinion was not entitled to controlling weight, the ALJ also determined that Dr. Smith's opinion could not be afforded great deference for several reasons. First, Dr. Smith's findings as well as "other objective physical examinations and remote past imaging records showing only mild findings, do not support her extreme standing limitations." *Id.* Likewise, the ALJ also recognized that Dr. Smith was not a psychiatrist, so she made attempts to refer Plaintiff to a specialist for her mental impairments. *Id.* at 1104-05. Plaintiff did not follow up with that referral. *Id.* at 1104.

Ultimately, Plaintiff alleges that the ALJ's particular findings as to these treating source opinions equate to "scattered and intermittent evidence [that] does not, when viewed

12

in context of the record as a whole, constitute the <u>substantial</u> evidence required to reject the treating source opinions." (Doc. No. 9, PageID 1580).  This argument lacks merit for the reasons set forth above.  Indeed, "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 390 (6th Cir. 1999).  Here, that threshold is met.

Accordingly, Plaintiff's Statement of Errors is without merit.

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is affirmed;
2. The case is terminated on the Court's docket.

<u>March 26, 2021</u>  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge